**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

CHRISTINE LEARING, individually and on behalf of all others similarly situated,

Plaintiff,

v.

THE ANTHEM COMPANIES, INC., Amerigroup Corporation, and Amerigroup Partnership Plan, LLC,

Defendants.

Case No. 21-cv-02283-KMM-JFD

**SECOND AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT**

## PRELIMINARY STATEMENT

1. This is a collective and class action brought by individual and representative Plaintiff Christine Learing ("Plaintiff"), on behalf of herself and all others similarly situated (the "putative FLSA Collective"), and on behalf of the members of the putative Minnesota Rule 23 Class, to recover overtime pay from The Anthem Companies, Inc. and other Anthem Inc. subsidiaries, Amerigroup Corporation and Amerigroup Partnership Plan, LLC (collectively, "Defendants").

2. Plaintiff brings this action on behalf of herself and all similarly situated individuals for violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA").

3. Plaintiff's claim is asserted as a collective action under the FLSA, 29 U.S.C. § 216(b). Plaintiff also brings claims to recover unpaid wages under the Minnesota

Payment of Wages Act ("MWPA"), Minn. Stat. § 181.101, and Minnesota Fair Labor Standards Act ("MFLSA"), Minn. Stat. § 177.25. Plaintiff brings these state law claims as a putative class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

4. The putative "FLSA Collective" is made up of all persons who are or have been employed by Defendants in the state of Minnesota as Medical Management Nurses, Utilization Management Nurses, Utilization Review Nurses, or other similar job titles who were paid a salary and treated as exempt from overtime laws, and whose primary job was to perform medical necessity reviews during the applicable statutory period.

5. The putative "Minnesota Rule 23 Class" is made up of all persons who are or have been employed by Defendants in the state of Medical Management Nurses, Utilization Management Nurses, Utilization Review Nurses, or other similar job titles who were paid a salary and treated as exempt from overtime laws, and whose primary job was to perform medical necessity reviews during the applicable statutory period.

6. As a result of Defendants' willful and illegal pay practices, Plaintiff and those similarly situated were deprived of overtime compensation for their hours worked in violation of federal and Minnesota state law.

## JURISDICTION AND VENUE

7. This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 to hear this Complaint and to adjudicate these claims because this action is brought under the FLSA.

8. This Court also has supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over the state law claims asserted, as the state and federal claims derive from a common nucleus of operative fact.

9. Venue is proper in the United States District Court for the District of Minnesota pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## PARTIES

10. Defendant The Anthem Companies, Inc. is a foreign limited liability company with its principal place of business located at 220 Virginia Ave., Indianapolis, Indiana, 46204, United States.

11. The Anthem Companies, Inc. is a wholly owned subsidiary of ATH Holding Company, LLC, which is a wholly owned subsidiary of Anthem, Inc., a publicly held corporation.

12. Defendant Amerigroup Corporation is a Delaware corporation with its principal place of business located at 4425 Corporate Lane, Virginia Beach, VA 23462.

13. Defendant Amerigroup Partnership Plan, LLC is an Illinois limited liability company with its principal place of business located at 120 Monument Circle, Indianapolis, IN 46204.

14. Anthem, Inc. is a multi-line health insurance company that provides managed care programs and related services.

15. Upon information and belief, Anthem, Inc. rebranded itself as Elevance Health on June 28, 2022.

16. Anthem, Inc. has at least 171 subsidiaries, including 60 regulated insurance companies, that employ thousands of individuals in various jobs to provide a broad suite of insurance products and services.

17. Anthem, Inc. organizes those various companies into three divisions: the Government Business Division (GBD), the Federal Employees Program (FEP), and the Commercial and Specialty Business Division (CSBD). Within those divisions, companies' operations are divided geographically into the East, Central, or West region.

18. According to its website, Anthem, Inc. provides healthcare benefits to more than 118 million members nationwide.

19. Anthem, Inc. and its subsidiaries operate in interstate commerce by, among other things, offering and selling a wide array of products and services, including but not limited to, preferred provider organization, consumer-driven health plans, traditional indemnity, health maintenance organization, point-of-service, ACA public exchange and off-exchange products, administrative services, Bluecard, Medicare plans, individual plans, Medicaid plans and other state-sponsored programs, pharmacy products, life insurance, disability products, radiology benefit management, personal health care guidance, dental, vision services and products, and Medicare administrative operations to customers and consumers in multiple states across the country, including Minnesota.

20. Anthem, Inc. acquired Amerigroup Corporation in 2013.

21. Upon information and belief, Amerigroup Partnership Plan, LLC is a subsidiary of Anthem, Inc.

22. Amerigroup Partnership Plan, LLC entered into a collaborative agreement with Blue Cross and Blue Shield of Minnesota and Blue Plus to provide certain managed care services to subscribers of Minnesota Medicaid Plans and other public and medical assistance plans.

23. Specifically, Amerigroup Corporation and Amerigroup Partnership Plan, LLC primarily provide utilization review services for Blue Cross Blue Shield's Medicaid population in Minnesota.

24. The Anthem Companies, Inc., Amerigroup Corporation, and Amerigroup Partnership Plan, LLC jointly employed Plaintiff and other similarly situated individuals and are "employers" of Plaintiff and other similarly situated individuals within the meaning of the FLSA, the MWPA, and the MFLSA.

25. Anthem, Inc. subsidiaries enter into a master administrative services agreement to use the same back-office operations for various functions. Those include payroll, human resources, and legal services.

26. The Anthem Companies, Inc. provides support to other subsidiaries of Anthem, Inc., including Amerigroup Corporation and Amerigroup Partnership Plan, in areas including finance, tax, payroll and human resources.

27. The Anthem Companies, Inc. operates office locations in multiple states around the country.

28. Prior to approximately March of 2020 (the onset of the COVID-19 pandemic), Defendants operated an office located in Eagan, Minnesota.

29. The Anthem Companies, Inc. determines the rate and method of payment of Plaintiff and others similarly situated.

30. Plaintiff's paystubs list The Anthem Companies, Inc. and its principal place of business address as her employer.

31. Upon information and belief, other similarly situated individuals' paystubs list The Anthem Companies, Inc. and its principal place of business address as their employer.

32. Amerigroup Corporation and Amerigroup Partnership Plan, LLC, through their parent company Anthem, Inc., provide hiring and termination paperwork to Plaintiff and other similarly situated individuals.

33. Amerigroup Corporation and Amerigroup Partnership Plan, LLC, through their parent company Anthem, Inc., send written human resources communications to Plaintiff and others similarly situated.

34. Through their parent company, Anthem, Inc., Defendants maintain data and personnel records on their employees, including the employees' names, employee ID, dates of employment, job title, job classification, work location, department, and supervisor.

35. Plaintiff and others similarly situated used both Anthem-wide and subsidiary-specific software tools and systems in the course of their employment maintained by Defendants.

36. Plaintiff and others similarly situated had access to a single intranet site maintained by Anthem.

37. Plaintiff and others similarly situated had Amerigroup email addresses, and their email signatures bore the Amerigroup name and logo.

38. The email signatures of Plaintiff and others similarly situated also referenced Amerigroup Partnership Plan, LLC.

39. Defendants controlled Plaintiff's and the other similarly situated individuals' work by determining how to structure the medical necessity reviews Plaintiff and the similarly situated employees conducted.

40. Plaintiff and the other similarly situated individuals used "Clinical Appropriateness Guidelines" and other guidelines and policies published under the Amerigroup name when conducting medical necessity reviews.

41. Plaintiff and the other similarly situated individuals also used medical policies, guidelines, and job aids published by Anthem when conducting medical necessity reviews.

42. When Plaintiff and other similarly situated individuals needed to escalate a medical authorization request for higher-level approval, they contacted Anthem's Medical Director.

43. Plaintiff and those similarly situated were supervised by managers employed by both The Anthem Companies, Inc. and the Amerigroup Defendants.

44. Some supervisors of Plaintiff and those similarly situated had Anthem email addresses and email signatures bearing the Anthem name and logo.

45. Other supervisors of Plaintiff and those similarly situated had Amerigroup email addresses and email signatures bearing the Amerigroup name and logo.

46. Performance review forms completed by supervisors of Plaintiff and others similarly situated bore the Anthem name.

47. Upon information and belief, Anthem's gross annual sales made, or business done has been in excess of $500,000.00 at all relevant times.

48. At all relevant times, Defendants are, and have been, "employers" engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. § 203(d).

49. Plaintiff Christine Learing is an adult resident of Dakota County, Minnesota.

50. Defendants employed Plaintiff as a Medical Management Nurse from approximately September 2018 to approximately June 2021.

51. Beginning in March 2020, Plaintiff worked out of her home in Dakota County, Minnesota. Prior to March 2020, Plaintiff reported to Defendants' Eagan, Minnesota office.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

52. At all times relevant herein, Defendants operated a willful scheme to deprive Plaintiff and others similarly situated of compensation.

53. Plaintiff and the similarly situated individuals work or worked as Medical Management Nurses, Utilization Management Nurses, Utilization Review Nurses, or other similar job titles, and were primarily responsible for performing medical necessity reviews for Defendants.

54. In conducting medical necessity reviews, Plaintiff and the other similarly situated individuals' primary job duty is non-exempt work consisting of reviewing medical authorization requests submitted by healthcare providers against pre-determined guidelines and criteria for insurance coverage and payment purposes.

55. Plaintiff and the similarly situated individuals are or were paid a salary with no overtime pay.

56. Plaintiff and the other similarly situated individuals are or were treated as exempt from overtime laws, including the FLSA and/or MFLSA.

57. Both Anthem and Amerigroup managers supervised Plaintiff and the other similarly situated individuals' work.

58. Defendants suffered and permitted Plaintiff to regularly work more than 40 and/or more than 48 hours in certain workweeks. Upon information and belief, Defendants also suffered and permitted the members of the putative FLSA Collective to regularly work more than 40 hours in certain workweeks and members of the putative Minnesota Rule 23 Class to regularly work more 48 hours in certain workweeks.

59. For example, in the workweek ending July 3, 2020, Plaintiff estimates that she worked approximately 51 hours and did not receive overtime pay for her overtime hours.

60. Defendants have been aware, or should have been aware, that Plaintiff, the putative FLSA Collective, and members of the putative Minnesota Rule 23 Class performed non-exempt work that required payment of overtime compensation. Defendants also required Plaintiff, the putative FLSA Collective, and members of the putative Minnesota Rule 23 Class to work long hours, including overtime hours, to complete all of their job responsibilities and meet Defendants' productivity standards.

61. Defendants knew that Plaintiff and the other similarly situated individuals worked unpaid overtime hours because Plaintiff and others complained about their long hours and the workload. Specifically, when Plaintiff complained to her supervisor about being required to work long hours to meet Defendants' production requirements, her

supervisor informed her that because she was working in a salaried position, she was expected to work as many hours as was necessary to complete the assigned workload. Plaintiff also complained to her director about the lack of a work/life balance, indicating that she believed she was being overworked. This complaint was largely ignored, and no significant changes were made to address Plaintiff's concerns.

62. Although Defendants had a legal obligation to do so, Defendants did not make, keep, or preserve adequate or accurate records of the hours worked by Plaintiff and the other similarly situated individuals.

## FLSA COLLECTIVE ACTION ALLEGATIONS

63. Plaintiff restates and incorporates by reference the above paragraphs as if fully set forth herein.

64. Plaintiff brings Count I individually and on behalf of that putative FLSA Collective.

65. Plaintiff files this action on behalf of herself and all other similarly situated individuals. The putative FLSA Collective is defined as follows:

> All persons who worked as Medical Management Nurses, Utilization Management Nurses, Utilization Review Nurses, or other similar job titles who were paid a salary and treated as exempt from overtime laws, and were primarily responsible for performing medical necessity reviews for Defendants in Minnesota from three years prior to the filing of this Complaint through judgment (the "FLSA Collective").

66. Plaintiff has consented in writing to be a part of this action pursuant to 29 U.S.C. § 216(b). Plaintiff's signed consent form is attached hereto as Exhibit A. At the time the initial complaint was filed, one additional Medical Management Nurse had also

signed a consent form to opt-in to this action, which is attached as Exhibit B. Other individuals have since filed consent forms and have joined this case as "opt-in" plaintiffs. (*See* Dkt. generally).

67. During the applicable statutory period, Plaintiff and the other similarly situated individuals routinely worked in excess of forty (40) hours in a workweek without receiving overtime compensation for their overtime hours worked.

68. Defendants willfully engaged in a pattern of violating the FLSA, as described in this Complaint, in ways including, but not limited to, requiring Plaintiff and the other similarly situated individuals to work excessive hours and failing to pay them overtime compensation.

69. Defendants are liable under the FLSA for failing to properly compensate Plaintiff and the entire putative FLSA Collective. Accordingly, notice should be sent to the putative FLSA Collective. There are numerous similarly situated current and former employees of Defendants who have suffered from Defendants' practice of denying overtime pay, and who would benefit from the issuance of court-supervised notice of this lawsuit and the opportunity to join. Those similarly-situated employees are known to Defendants, and are readily identifiable through their records.

## MINNESOTA RULE 23 CLASS ACTION ALLEGATIONS

70. Plaintiff re-alleges and incorporates by reference all allegations in the preceding paragraphs.

71. Pursuant to Fed. R. Civ. P. 23(a) and 23(b), Plaintiff brings Counts II and III individually and on behalf of the putative Minnesota Rule 23 Class.

72. The class of similarly situated employees sought to be certified under Fed. R. Civ. P. 23(a) and 23(b) as a class action under the MPWA and MFLSA is defined as:

> All persons who worked as Medical Management Nurses, Utilization Management Nurses, Utilization Review Nurses, or other similar job titles who were paid a salary and treated as exempt from overtime laws, and were primarily responsible for performing medical necessity reviews for Defendants in Minnesota from three years prior to the filing of this Complaint through judgment (the "Minnesota Rule 23 Class").

73. The persons in the putative Minnesota Rule 23 Class are so numerous that joinder of all members is impracticable. While the precise number has not been determined, Defendants, on information and belief, have employed at least forty (40) individuals as Medical Management Nurses, Utilization Management Nurses, Utilization Review Nurses, or other similar job titles during the applicable statute of limitations period. Plaintiff and the putative Minnesota Rule 23 Class have been equally affected by Defendants' violations of law.

74. There are questions of law and fact common to the putative Minnesota Rule 23 Class that predominate over any questions solely affecting individual members, including but not limited to the following:

a. Whether Defendants violated Minnesota law by failing to pay current and former MN Rule 23 class members for all wages earned;
b. Whether Defendants violated MN law by failing to pay overtime wages;
c. The proper measure and calculation of damages; and
d. Whether Defendants' actions were willful or in good faith.

75. Plaintiff's claims are typical of those members of the putative Minnesota Rule 23 Class. Plaintiff, like other members of the putative Minnesota Rule 23 Class, was

subject to Defendants' practices and policies described in this Complaint. Further, Plaintiff's job duties are typical of the putative Minnesota Rule 23 Class, as all class members are or were Medical Management Nurses, Utilization Management Nurses, Utilization Review Nurses, or other similar job titles who were primarily responsible for performing medical necessity reviews.

76. Plaintiff will fairly and adequately protect the interest of the putative Minnesota Rule 23 Class and has retained counsel experienced in complex wage and hour class and collective action litigation.

77. This action is properly maintainable as a class action under Fed. R. Civ. P. 23(b)(3) because questions of law or fact predominate over any questions affecting individual class members, and a class action is superior to other methods in order to ensure a fair and efficient adjudication of this controversy because, in the context of wage and hour litigation, individual plaintiffs lack the financial resources to vigorously prosecute separate lawsuits in federal court against large corporate defendants. Class litigation is also superior because it will preclude the need for unduly duplicative litigation resulting in inconsistent judgments pertaining to Defendants' policies and practices. There do not appear to be any difficulties in managing this class action.

78. Plaintiff intends to send notice to all members of the putative Minnesota Rule 23 Class to the extent required by Fed. R. Civ. P. 23.

## CAUSES OF ACTION

## COUNT I – VIOLATION OF THE FAIR LABOR STANDARDS ACT
## FAILURE TO PAY OVERTIME
## (On Behalf of Plaintiff and the Putative FLSA Collective)

79. Plaintiff restates and incorporates by reference the above paragraphs as if fully set forth herein.

80. The FLSA, 29 U.S.C. § 207, requires employers to pay non-exempt employees one and one-half times the regular rate of pay for all hours worked over forty (40) hours per workweek.

81. Defendants suffered and permitted Plaintiff and the other similarly situated individuals to routinely work more than forty (40) hours in a workweek without overtime compensation.

82. Defendants' actions, policies, and practices described above violate the FLSA's overtime requirement by regularly and repeatedly failing to compensate Plaintiff and the other similarly situated individuals their required overtime compensation.

83. As the direct and proximate result of Defendants' unlawful conduct, Plaintiff and the other similarly situated individuals have suffered and will continue to suffer a loss of income and other damages. Plaintiff and the other similarly situated individuals are entitled to liquidated damages and attorney's fees and costs incurred in connection with this claim.

84. By failing to accurately record, report, and/or preserve records of hours worked by Plaintiff and the other similarly situated individuals, Defendants have failed to make, keep, and preserve records with respect to each of their employees sufficient to

determine their wages, hours, and other conditions and practice of employment, in violation of the FLSA, 29 U.S.C. § 201, *et seq*.

85. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a). Defendants knew or showed reckless disregard for the fact that their compensation practices were in violation of these laws.

**COUNT II – VIOLATION OF THE MINNESOTA FAIR LABOR STANDARDS ACT**
**(On behalf of Plaintiff and the Putative Minnesota Rule 23 Class)**

86. Plaintiff, individually and on behalf of the proposed Minnesota Rule 23 Class, re-alleges and incorporates by reference the above paragraphs as if fully set forth herein.

87. Plaintiff and the putative Minnesota Rule 23 Class were or are employees of Defendants and Defendants were their employers within the meaning of the MFLSA, Minn. Stat. §§ 177.23 and 177.24.

88. The MFLSA requires employers to pay their employees for hours worked in excess of 48 in an individual work week at a rate no less than 1.5 times their regular hourly rate of pay.

89. When Defendants improperly classified Plaintiff and the putative Minnesota Rule 23 Class as exempt from overtime wages, they violated the MFLSA.

90. The foregoing conduct constitutes a willful violation of the MFLSA within the meaning of Minn. Stat. § 541.07.

91. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and the putative Minnesota Rule 23 Class have suffered damages in an amount to be determined at trial.

92. Plaintiff and the proposed Minnesota Class are entitled to unpaid overtime, liquidated damages, and attorney's fees and costs under the MFLSA.

**COUNT III - VIOLATION OF THE MINNESOTA PAYMENT OF WAGES ACT**
**(On behalf of Plaintiff and the Putative Minnesota Rule 23 Class)**

62. Plaintiff, individually and on behalf of the proposed Minnesota Rule 23 Class, re-alleges and incorporates by reference the above paragraphs as if fully set forth herein. Plaintiff and members of the proposed Minnesota Rule 23 Class are current and former employees of Defendants within the meaning of Minn. Stat. § 181.101.

63. Defendants are or were Plaintiff's and the proposed Minnesota Rule 23 Class's employers within the meaning of Minn. Stat. § 181.171(4).

64. Minn. Stat. § 181.101 requires every employer to pay all wages earned by an employee at least once every 31 days on a regular payday designated in advance by the employer regardless of whether the employee requests payment at longer intervals.

65. For purposes of Minn. Stat. § 181.101, wages are earned on the day an employee works and Minn. Stat. § 181.101 provides a substantive right for employees to the payment of wages, including salary, earnings, and gratuities, as well as commissions, in addition to the right to be paid at certain times.

66. Minn. Stat. § 181.13 provides that when an employer discharges an employee, the wages or commissions actually earned and unpaid at the time of the discharge are immediately due and payable.

67. Minn. Stat. § 181.14 provides that when an employee quits or resigns employment, the wages or commissions earned and unpaid at the time the employee quits or resigns must be paid in full no later than the next regularly scheduled payday.

68. Defendants, pursuant to their pay practices, refused and failed to pay the Plaintiff and the proposed Minnesota Rule 23 Class for all of their hours worked.

69. By failing to properly compensate Plaintiff and the proposed Minnesota Rule 23 Class, Defendants violated, and continue to violate consultants' statutory rights under Minn. Stat. §§ 181.101, 181.13, and 181.14.

70. Defendants' actions were willful and not the result of mistake or inadvertence. *See* Minn. Stat. § 541.07(5).

71. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and the proposed Minnesota Rule 23 Class have suffered damages in an amount to be determined at trial.

72. Plaintiff and the proposed Minnesota Rule 23 Class seek damages in the amount of their unpaid wages for all hours worked, reasonable attorneys' fees and costs for this action, pre- and post-judgment interest, penalties, and such other legal and equitable relief as the Court deems proper.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of herself and the putative FLSA Collective, prays for judgment against Defendants as follows:

A. Designation of this action as a collective action on behalf of Plaintiff and those similarly situated, and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all those similarly-situated apprising them of the pendency of this action, and permitting them to assert timely FLSA claims in this action by filing individual consent forms;

B. A finding that Plaintiff and the putative FLSA Collective are non-exempt employees entitled to protection under the FLSA;

C. A finding that Defendants violated the overtime provisions of the FLSA;

D. Judgment against Defendants in the amount of Plaintiff's and the putative FLSA Collective's unpaid back wages at the applicable overtime rates;

E. An award of all damages, liquidated damages, pre-judgment interest and post-judgment interest;

F. An award of attorneys' fees and costs incurred in prosecuting this action;

G. Leave to add additional plaintiffs and/or state law claims by motion, the filing of written consent forms, or any other method approved by the Court; and

H. For such other and further relief, in the law or equity, as this Court may deem appropriate and just.

**WHEREFORE**, Plaintiff, individually and on behalf of the putative Minnesota Rule 23 Class, prays for relief as follows:

A. Certification of this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of the putative Minnesota Rule 23 Class, and the appointment of Plaintiff as the class representative and her counsel as class counsel;

B. Judgment against Defendants for violation of the overtime provisions of the MFLSA;

C. Judgment that Defendants' violations of the MFLSA and MWPA were willful;

D. An award to Plaintiff and the putative Minnesota Rule 23 class for unpaid regular and overtime wages and liquidated damages;

E. An award of any pre- and post-judgment interest;

F. An award of reasonable attorneys' fees and costs;

G. Leave to amend to add additional plaintiffs, defendants, and/or state law claims by motion or any other method approved by the Court; and

H. Such further relief as the Court deems just and equitable.

DATED: August 5, 2022

**NICHOLS KASTER, PLLP**

/s/Rachhana T. Srey
Rachhana T. Srey, MN Bar No. 340133
Caitlin L. Opperman MN Bar No. 0399978
4700 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: (612) 256-3200
Facsimile: (612) 338-4878
srey@nka.com
copperman@nka.com

**Attorneys for Plaintiff, the FLSA Collective, and Putative Minnesota Rule 23 Class**